UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO ALVAREZ, | 1:08-cv-01205-SMS |
| Plaintiff, | DECISION AND ORDER DENYING PLAINTIFF'S SOCIAL SECURITY COMPLAINT (DOC. 2) |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ORDER DIRECTING THE ENTRY OF JUDGMENT FOR DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF ARTURO ALVAREZ |
| Defendant. | |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application of December 7, 2005, for Supplemental Security Income (SSI) benefits in which he had claimed to have been disabled since January 1, 2002, due to phobia, schizophrenia, depression, anxiety, and chest pain. (A.R. 69, 93-94, 112.) The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), and pursuant to the order of Judge Lawrence J. O'Neill filed September 18, 2008, the matter has been assigned to the Magistrate Judge to conduct all further proceedings in this case,

1

1 including entry of final judgment.

2    The decision under review is that of Social Security
3 Administration (SSA) Administrative Law Judge (ALJ) Bert C.
4 Hoffman, Jr., dated January 24, 2008 (A.R. 10-16), rendered after
5 a hearing held November 13, 2007, at which Plaintiff appeared and
6 testified with the assistance of counsel (A.R. 10, 241-76). The
7 Appeals Council denied Plaintiff's request for review on June 25,
8 2008 (A.R. 2-4), and thereafter Plaintiff filed his complaint in
9 this Court on August 13, 2008. Briefing commenced on April 1,
10 2009, and was completed with the filing of Plaintiff's reply on
11 May 12, 2009. The matter has been submitted without oral argument
12 to the undersigned Magistrate Judge.

13    I. Standard and Scope of Review

14    Congress has provided a limited scope of judicial review of
15 the Commissioner's decision to deny benefits under the Act. In
16 reviewing findings of fact with respect to such determinations,
17 the Court must determine whether the decision of the Commissioner
18 is supported by substantial evidence. 42 U.S.C. § 405(g).
19 Substantial evidence means "more than a mere scintilla,"
20 Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
21 preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
22 (9th Cir. 1975). It is "such relevant evidence as a reasonable
23 mind might accept as adequate to support a conclusion."
24 Richardson, 402 U.S. at 401. The Court must consider the record
25 as a whole, weighing both the evidence that supports and the
26 evidence that detracts from the Commissioner's conclusion; it may
27 not simply isolate a portion of evidence that supports the
28 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

1  2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

2  It is immaterial that the evidence would support a finding

3  contrary to that reached by the Commissioner; the determination

4  of the Commissioner as to a factual matter will stand if

5  supported by substantial evidence because it is the

6  Commissioner's job, and not the Court's, to resolve conflicts in

7  the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

8  Cir. 1975).

9      In weighing the evidence and making findings, the

10 Commissioner must apply the proper legal standards. Burkhart v.

11 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

12 review the whole record and uphold the Commissioner's

13 determination that the claimant is not disabled if the

14 Commissioner applied the proper legal standards, and if the

15 Commissioner's findings are supported by substantial evidence.

16 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

17 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

18 the Court concludes that the ALJ did not use the proper legal

19 standard, the matter will be remanded to permit application of

20 the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

21 Cir. 1987).

22      II. Disability

23          A. Legal Standards

24      In order to qualify for benefits, a claimant must establish

25 that she is unable to engage in substantial gainful activity due

26 to a medically determinable physical or mental impairment which

27 has lasted or can be expected to last for a continuous period of

28 not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

3

claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the

4

1   applicant's age, education, work experience, and residual
2   functional capacity, the applicant can perform any other gainful
3   and substantial work within the economy. See 20 C.F.R. § 416.920.

4               B. The ALJ's Findings

5       Relying on the diagnoses of treating physician Dr. R. Ensom
6   of August 2007, the ALJ found that Plaintiff had serious
7   impairments of schizophrenia, paranoid type, and dysthymic
8   disorder that did not meet or medically equal a listed
9   impairment. (A.R. 12, 118.) Plaintiff had moderate restrictions
10  in activities of daily living, social functioning, and
11  concentration, persistence, or pace, and no episodes of
12  decompensation. Plaintiff had the residual functional capacity to
13  perform a full range of work at all exertional levels but with
14  nonexertional limitations of moderate limitation in
15  understanding, remembering, and carrying out detailed
16  instructions, but with the ability to perform at least simple,
17  repetitive tasks, relate adequately with other people, and adapt
18  adequately to work routines. (A.R. 12-15.) Plaintiff's
19  nonexertional limitations had little or no effect on the
20  occupational base of unskilled work, the basic mental demands of
21  which were to perform simple tasks, respond appropriately to
22  supervisors and coworkers, and deal with changes in a routine
23  work setting. Considering Plaintiff's age (twenty years old at
24  the time the application was filed), education (at least a high
25  school education), work experience (no past relevant work), and
26  RFC, Plaintiff could perform jobs that exist in significant
27  numbers in the national economy. (A.R. 15-16.)
28  ///////

III. <u>Credibility Findings</u>

    A. <u>Legal Standards</u>

Unless there is affirmative evidence that the applicant is malingering, then where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which the applicant complains, an adverse credibility finding must be based on clear and convincing reasons. <u>Carmickle v. Commissioner, Social Security Administration,</u>, 533 F.3d 1155, 1160 (9th Cir. 2008). In <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007), the Court summarized the appropriate factors or reasons considered in determining credibility:

> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." <u>Fair</u>, 885 F.2d at 603; see also <u>Thomas</u>, 278 F.3d at 958-59.

    B. <u>Analysis</u>

The ALJ referred to the opinions of Plaintiff's mother and sibling as well as to Plaintiff's testimony regarding his

markedly limiting mental symptoms, problems with interacting

appropriately with others, and persistent nervousness. (A.R. 14.)

Plaintiff had testified that he did not like seeing people;

suffered depression twice a week that was precipitated by the

behavior of his twin brother, who was anti-social and who

interacted violently with Plaintiff's mother; the depression

caused Plaintiff to cry weekly, lose interest in activities, and

be nervous, but it was improved by Plaintiff's doing things such

as biking or using the computer. Plaintiff had taken medications,

Abilify and Lexapro, for two years,[1] and he found that the Abilify

eliminated the auditory hallucinations concerning Plaintiff's

dead father but caused drowsiness and mood swings, so he took it

at night. (A.R. 248, 252, 256-57, 260, 263-64, 271, 273.)

### 1. Inconsistency of Medical Evidence

The ALJ reviewed the medical evidence and reasoned that the

opinions of state agency medical consultants in May 2006 and

January 2007 showed only moderate limitations concerning detailed

instructions with a retained capacity to perform simple,

repetitive tasks, relate adequately to others, and adapt

adequately to work routines. (A.R. 14.) The ALJ noted that the

earlier, more severe symptoms had been experienced by Plaintiff

before he began taking the new medications and continued to take

them consistently. (Id. at 14-15.)

Although the inconsistency of objective findings with

[1] Plaintiff previously had been prescribed Paxil, but he had stopped
taking it for months before July 2005, when Plaintiff was found inside a
neighbor's house without permission; Plaintiff had entered when he reported
that he had heard voices inviting him to enter. (A.R. 271.) Plaintiff's
medications were adjusted to the two present medications at the time of
Plaintiff's brief commitment pursuant to Welf. & Inst. Code sec. 5150 and
aftercare in July 2005. (Id.)

1  subjective claims may not be the sole reason for rejecting

2  subjective complaints of pain, <u>Light v. Chater</u>, 119 F.3d 789, 792

3  (9th Cir. 1997), it is one factor which may be considered with

4  others, <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004);

5  <u>Morgan v. Commissioner</u> 169 F.3d 595, 600 (9th Cir. 1999). Further,

6  it is appropriate to consider the inconsistency of a documented

7  improvement with claims of continuing, unabated symptoms. <u>Morgan</u>

8  <u>v. Commissioner</u>, 169 F.3d 595, 599 (9th Cir. 1999).

9       As will be dismissed in more detail in connection with the

10 opinion evidence, substantial evidence supported the ALJ's

11 conclusion that the medical evidence showed marked improvement

12 after Plaintiff began consistently taking medications after the

13 incident in 2005.

14                2. <u>Inconsistency in Plaintiff's Statements</u>

15      The ALJ relied on Plaintiff's having made inconsistent

16 statements, recorded in treatment records, concerning Plaintiff's

17 history of substance abuse. (A.R. 14-15.) The record supports the

18 ALJ's observations. In July 2005, it was reported that there was

19 no history of drug or alcohol abuse (A.R. 204), and Plaintiff

20 specifically denied alcohol or drug use (A.R. 205, 207).

21 Medication services progress notes from September 2005 reflect

22 that Plaintiff reported that he used no drugs or alcohol. (A.R.

23 159.) The report of the internal medicine consultant of the exam

24 from January 2006 reflects that Plaintiff stated that he did not

25 smoke tobacco, drink alcohol, or use illicit drugs. (A.R. 170.)

26 However, in contrast, a medication progress note from August 2005

27 reflected that he admitted to his doctor that he used marijuana

28 occasionally and had last used it three months previously. The

diagnostic impression in the note included cannabis abuse. (A.R. 167.) Further, another note from August 2005 reflected that Plaintiff's service was transferred from youth service with a diagnosis that included a history of alcohol abuse. (A.R. 165.) Plaintiff admitted that he had relapsed during rehabilitation

Inconsistent statements are matters generally considered in evaluating credibility and are properly factored in evaluating the credibility of a claimant with respect to subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, or internal contradictions in the testimony; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

The Court concludes that the ALJ's reasoning concerning Plaintiff's inconsistent statements was clear and convincing in force and was supported by substantial evidence.

3. Activities of Daily Living

A claimant's ability to engage in activities of daily living to the extent that he or she spends a substantial part of his day engaged in pursuits involving the performance of functions that are transferable to the work setting is relevant; a specific finding as to this fact may be sufficient to discredit a

9

claimant's allegations. <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002). For example, in <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002), the claimant's ability to perform various household chores such as cooking, laundry, washing dishes, and shopping, was considered as inconsistent with the claimant's subjective complaints and as a basis for a finding that she lacked candor with respect to her descriptions of her pain.

Here, the ALJ stated the following:

> At the November 2007 hearing, moreover, the claimant testified that his regular activities include running, assisting with household vacuuming and shopping chores, bike riding, using the computer, and playing pool with a friend. He also testified that he occasionally goes to the movies and restaurants. Thus, at a minimum, the claimant's daily activities seem inconsistent with an allegation of markedly limiting impairments. Also notable, the inconsistencies in the claimant's allegations regarding his history of substance abuse, as indicated above, do not enhance his credibility, nor does his history of poor compliance with his prescribed medication.

(A.R. 15.)

Substantial evidence supports the ALJ's reasoning concerning Plaintiff's daily activities. Plaintiff testified that in the past six months he had lost significant weight by running, and he ran forty-five minutes per day, four to five days per week; he also swept, vacuumed, helped around the house, helped his mother look after his anti-social twin brother, carried groceries, shopped a couple of times a week, rode his bike with friends, played pool weekly with friends, and went on the computer to play games or go on the internet. (A.R. 245-47, 260-61, 266-67.) He could concentrate on the computer for one hour, but he would then

1  need a break of an hour. (A.R. 272.) He had taken public
2  transportation when he completed a semester at city college and
3  had passed with special tutoring. (A.R. 252-55.)

4      The pertinent record largely consists of Plaintiff's own
5  testimony, which fairly reflects that Plaintiff regularly left
6  the house, navigated the neighborhood and city, and engaged in
7  tasks that ranged from simple and repetitive tasks to activities
8  involving greater concentration, focus, memory, and attention to
9  pace than simple and repetitive tasks. These activities are
10 inconsistent with claims of mental impairment so severe that
11 appropriate interaction with others and attention to and ability
12 to complete tasks are foreclosed. Further, the record supports
13 the ALJ's observation that there was no medical evidence
14 supporting a finding that Plaintiff suffered any significant
15 physical impairment.

16     The Court concludes that it was with the support of
17 substantial evidence that the ALJ reasoned that Plaintiff's
18 activities of daily living were inconsistent with claims of
19 inability to perform simple, repetitive tasks. It is further
20 concluded that considering the circumstances of this case, the
21 ALJ's reasoning was clear and convincing.

22     Plaintiff complains that because Plaintiff suffers from a
23 mental impairment, it was inappropriate for the ALJ to have
24 chastised Plaintiff for his history of poor compliance with
25 medication. (A.R. 15.)

26     Assuming for the purpose of analysis that this reasoning was
27 inappropriate in the instant case, where only some of the
28 specific reasons stated by an ALJ for rejecting an applicant's

1 credibility are legally sufficient or supported by the record,
2 but others are not, the Court must consider whether the ALJ's
3 reliance on invalid reasons was harmless error. Batson v.
4 Commissioner of Social Security administration, 359 F.3d 1190,
5 1195-97 (9th Cir. 2004). Such errors are harmless and do not
6 warrant reversal where there remains substantial evidence
7 supporting the ALJ's conclusions on credibility, and the error
8 does not negate the validity of the ALJ's ultimate credibility
9 conclusions. Carmickle v. Commissioner, Social Security
10 Administration, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant
11 inquiry is not whether the ALJ would have made a different
12 decision absent any error, but rather whether the ALJ's decision
13 remains legally valid despite such error. Id.

14     Here, as the foregoing analysis demonstrates, there were
15 other independent, clear, and convincing reasons supporting the
16 ALJ's conclusion concerning Plaintiff's credibility. Any error
17 concerning Plaintiff's noncompliance with medication would not
18 negate the validity of the ALJ's ultimate credibility conclusions
19 or render them legally invalid.

20     Accordingly, the Court concludes that the ALJ cited clear
21 and convincing reasons for rejecting Plaintiff's subjective
22 complaints, and that the ALJ's reasons were properly supported by
23 the record and sufficiently specific to allow this Court to
24 conclude that the ALJ rejected the claimant's testimony on
25 permissible grounds and did not arbitrarily discredit Plaintiff's
26 testimony.
27 ///////
28     IV. Lay Opinion

12

The ALJ adverted to Plaintiff's mother's statement of December 2005, describing markedly limiting symptoms of nervousness and problems with interacting appropriately with others. (A.R. 14, 99-106.) Plaintiff's mother described Plaintiff as not engaging in conversation, needing to be reminded to take medication, nervous, able to help with some chores for an hour a week and to count change and play video games, but unable to walk for four blocks before needing to rest for ten minutes, and able to pay attention for only three minutes. She also indicated that he rarely went out. (A.R. 99-106.)[2]

The ALJ also noted the statement of Plaintiff's "brother" of October 2007 to the effect that Plaintiff continued to have persistent hallucinations, notwithstanding Plaintiff's use of medications, and that his medications altered his personality (A.R. 14, 83).

Plaintiff asserts that the ALJ erred in not addressing his sister's statement. Defendant does not address this issue or offer any explanation for failing to address it.

The record contains a statement from a Diana Alvarez (A.R. 83), which appears to be the document mistakenly referred to by the ALJ during his evaluation of Plaintiff's subjective complaints; the ALJ referred to a statement from "his brother." (A.R. 14.) The ALJ referred to "Exhibit 1F/35." (A.R. 14.) Although the Commissioner has not seen fit to mark or index the exhibits by number and letter in the record submitted to this

---

[2] The Court notes that Plaintiff's mother also reported that Plaintiff got along well with authority figures and worried easily, and the only unusual behavior referred to involved the auditory hallucinations that Plaintiff used to experience "[b]efore taking medication." (A.R. 104-05.)

Court[3], the Court infers that Exhibit 1F/35 is indeed A.R. 83, which bears an isolated page number of "35," without reference to 1F or other indicia of the identity of the exhibit, and which is not the only page with a "35" on it in the record, but which out of the pages with a "35" on them seems to bear the closest correspondence to what the ALJ and the parties are talking about in connection with this issue.

The record does not contain a separate statement from a brother of Plaintiff. The ALJ's description of the substance of the statement was consistent with the substance of the sister's letter, which detailed Plaintiff's pre-medication episode of entering a neighbor's house and having to go to a mental hospital, and asserted that upon being medicated Plaintiff was no longer outgoing, did not initiate conversation, sometimes gave senseless replies in conversation, and gained weight and slept a lot. (A.R. 83, 14.) Under the circumstances, the Court concludes that the ALJ made a mistake when he was referring to the gender of Plaintiff's sibling. However, even considering the inadequately prepared record before this Court, it may be concluded with reasonable certainty that the ALJ did intend to refer to the sister's letter when he referred to the letter of a brother of Plaintiff.

As to the legal sufficiency of the ALJ's reasoning with respect to the mother's and sister's opinions, the ALJ reviewed the medical evidence and contrasted Plaintiff's symptoms and

---

[3] The Court notes that the Commissioner's cavalier treatment of the medical evidence in the list of exhibits as "MEDICAL EVIDENCE," without further breakdown, with a reference to over 120 pages of undifferentiated medical data, and the lack of any exhibit numbers on the pages of the records themselves, have caused the unnecessary expenditure of judicial resources as well as delay.

signs upon examination before and after he had achieved compliance with his medications and any substance abuse had ceased; further, he noted Plaintiff's inconsistent daily activities. (A.R. 14-15.) The ALJ pointed out the absence of medical evidence that Plaintiff suffered physical limitations. (A.R. 15.)

Lay witnesses, such as friends or family members in a position to observe a claimant's symptoms and daily activities, are competent to testify to a claimant's condition; the Commissioner will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). An ALJ cannot discount testimony from lay witnesses without articulating specific reasons for doing so that are germane to each witness. Id. at 919.

Here, the ALJ relied on the inconsistency of the medical record of examinations subsequent to Plaintiff's regularly taking his medications, which generally reflected reports from Plaintiff of milder symptoms as well as minimal or normal clinical findings. He also referred to the absence of medical evidence of physical limitations, citing to the report of internal medicine consulting examiner Dr. Steven Stoltz, who in January 2006 found no objective evidence for any ongoing medical disorders that should place any limits on activities. (A.R. 173, 169-74.)

It is appropriate for an ALJ to rely on medical evidence in rejecting inconsistent testimony. Lewis v. Apfel, 236 F.3d 503, 511-12 (9th Cir. 2001) (noting the propriety of rejecting family members' testimony in part because of inconsistency with medical

1  history generally alluded to in the decision); <u>Thomas v.</u>
2  <u>Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

3      In summary, the Court concludes that the ALJ stated germane
4  reasons, supported by substantial evidence in the record, for
5  rejecting the lay sources' assertions concerning Plaintiff's
6  functionality.

7      V. <u>Residual Functional Capacity</u>

8      Plaintiff challenges the sufficiency of the evidence to
9  support the ALJ's finding concerning Plaintiff's RFC, arguing
10 that the opinions of the state agency medical consultants relied
11 on by the ALJ were inconsistent with the ALJ's conclusions; the
12 ALJ's RFC was inconsistent with the ALJ's own findings; and the
13 ALJ should have re-contacted Plaintiff's treating physician, Dr.
14 Ensom, for clarification or further explanation of his opinions
15 before relying on the state agency physicians.

16     The ALJ adopted the opinion of two state agency medical
17 consultants. (A.R. 14.) G. K. Ikawa, M.D., a state agency
18 physician, opined in May 2006 that Plaintiff's limitations were
19 "mild" in the areas of daily living, social functioning, and
20 concentration, persistence, or pace as a result of schizophrenic
21 and affective disorders; Plaintiff was rated as being moderately
22 limited in the ability to understand, remember, and carry out
23 detailed instructions but otherwise was not significantly
24 limited; further, he was able to sustain simple, repetitive
25 tasks, and to relate adequately with other people and adapt
26 adequately to work routines. (A.R. 185, 189-91, 175-92.) Dr.
27 Ikawa's opinion was affirmed by another state agency doctor,
28 Allen Middleton, Ph.D., in January 2007. (A.R. 175.)

1    The ALJ reasoned that the opinions were essentially well-
2 supported by the record. (A.R. 14.)

3    It is established that factors relevant to evaluating any
4 medical opinion include the amount of relevant evidence that
5 supports the opinion and the quality of the explanation provided;
6 the consistency of the medical opinion with the record as a
7 whole; the specialty of the physician providing the opinion; and
8 "[o]ther factors" such as the degree of understanding a physician
9 has of the Administration's "disability programs and their
10 evidentiary requirements" and the degree of his or her
11 familiarity with other information in the case record. 20 C.F.R.
12 § 416.927; <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007).

13    Further, the opinion of a nontreating, nonexamining
14 physician can amount to substantial evidence as long as it is
15 supported by other evidence in the record, such as the opinions
16 of other examining and consulting physicians, which are in turn
17 based on independent clinical findings. <u>Andrews v. Shalala</u>, 53
18 F.3d 1035, 1041 (9th Cir. 1995).

19    Here, a brief review of the medical record reveals that it
20 is consistent with and supportive of the opinions of the state
21 agency consultants. The ALJ stated specific, legitimate reasons
22 for the handling of the opinion evidence and conclusions relating
23 to Plaintiff's RFC.

24    Plaintiff received mental health treatment as a child before
25 2004 and as an adult beginning in July 2005. Plaintiff was
26 discharged from children's mental health in October 2004 based on
27 improved social functioning and Plaintiff's choice to engage in
28 school work and classes in place of treatment follow-up. (A.R.

218, 211-14.)

After being off medication for many months, Plaintiff was admitted for treatment pursuant to Cal. Welf. & Inst. Code sec. 5150 in mid-July 2005 because he had heard voices inviting him in to the home of a neighbor, where he was found in the middle of the night. (A.R. 120-131, 204.) After being diagnosed with schizophrenia and depression, he was released with a prescription for Risperdal.

Notes of follow-up treatment at the Community Behavioral Health Center in mid-July 2005 reflect that Plaintiff was internally preoccupied but denied hallucinations; his symptoms were reduced with compliance with new medications, which included Abilify instead of Risperdal, and Effexor. Plaintiff's GAF was 45. (A.R. 194-95, 202-204.) Plaintiff was discharged with a GAF of 65. (A.R. 194-95.) In August 2005, Plaintiff reported feeling very good with the medications with no side-effects; he was calm and cooperative, with no delusional thinking; the mental status exam revealed normal responses except for restricted affect. (A.R. 167.)

Plaintiff's improved condition continued throughout 2005 and 2006. Plaintiff was doing well, hallucinations had subsided, sleep was good, the medications worked fine except for some sleepiness in the daytime that was addressed with a lower dosage, and the mental status exams were largely normal. (A.R. 154-158, 152-53, 145-46, 149.) On July 18, 2006, Dr. Ensom wrote a letter stating that he had been treating Plaintiff for schizophrenia and secondary depression, and that the prognosis for improvement in function was poor. (A.R. 151.)

1    In 2007, periodic examinations by Dr. Ensom and continued

2  treatment in the form of medication reflected continuing

3  stability, with mental status exams reflecting average and normal

4  responses, improved depression, and an absence of side-effects.

5  Dr. Ensom assessed a GAF of 40 on a visit in January 2007, and of

6  45 on visits in April and July 2007. (A.R. 133-35.)

7    The state agency physicians had the benefit of the

8  longitudinal record of Plaintiff's treatment after the episode in

9  2005. The independent findings of Plaintiff's treating sources

10 constituted legally sufficient evidence to support the conclusion

11 of the state agency medical consultants, which were consistent

12 with the pertinent medical evidence of record.

13   That Dr. Ensom assessed global assessments of functioning

14 (GAF) that reflected low levels of functioning is not

15 determinative. First, the Court notes that the ALJ expressly

16 relied on the overall record and not any specific formulation by

17 Dr. Ensom. Further, neither SSA regulations nor governing case

18 law requires an ALJ to take a GAF score into consideration in

19 determining the extent of disability. See Howard v. Commissioner

20 of Social Security, 276 F.3d 235, 241 (6th Cir. 2002); Trinchere

21 v.Astrue, 2008 WL 4395283, *6 (C.D.Cal. Sept. 3, 2008).

22   Further, the fact that some moderate limitations were found

23 in the mental residual functional capacity assessment does not

24 preclude the RFC assigned by the ALJ. A moderate difficulty in

25 concentration, persistence, or pace has been held to be

26 consistent with the ability to perform simple, repetitive tasks

27 where there is specific evidence of the ability of the claimant

28 to perform such tasks despite the assessed limitations. See,

1  <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008).

2  Here, the moderate limitation with respect to detailed

3  instructions was addressed by the specific finding of ability to

4  perform simple, repetitive tasks, and to adapt and get along in

5  the work place.

6    VI. <u>Development of the Medical Record</u>

7    Plaintiff argues that the ALJ's determination of Plaintiff's

8  RFC cannot stand because the ALJ failed to perform his duty to

9  develop the medical record, and, specifically, to re-contact

10  Plaintiff's treating source, Dr. Ensom, to obtain his opinion

11  concerning Plaintiff's RFC.

12    The duty to develop the record arises where the record

13  before the ALJ is ambiguous or inadequate to allow for proper

14  evaluation of the evidence. 20 C.F.R. §§ 404.1512(e) and

15  416.912(e); <u>Mayes v. Massanari</u>, 262 F.3d 963, 968 (9th Cir. 2001).

16  It is true that there was not an opinion from Plaintiff's

17  treating source as to his ability to work. However, the record

18  contained the opinions of the state agency physicians and what

19  appears to be Plaintiff's complete treatment records. The

20  evidence supported the ALJ's findings and did not present an

21  ambiguity or inadequacy. Because it is the plaintiff's burden to

22  present evidence of disability, the mere absence of a report from

23  a treating physician does not give rise to a duty to develop the

24  record; rather, that duty is triggered only where there is an

25  inadequacy or ambiguity. <u>Bayliss v.Barnhart</u>, 427 F.3d 1211, 1217

26  (9th Cir. 2005). Here, the ALJ found, with the support of the

27  record, that Plaintiff had not established that he was disabled.

28    Further, the Court notes that at the hearing, the ALJ asked

1  Plaintiff's attorney if he wanted to add any other evidence to
2  the record, and he responded in the negative. (A.R. 243.)

3        VII. <u>Disposition</u>

4        In summary, based on the foregoing, the Court concludes that
5  the ALJ's decision was supported by substantial evidence in the
6  record as a whole and was based on the application of correct
7  legal standards.

8        Accordingly, the Court AFFIRMS the administrative decision
9  of the Defendant Commissioner of Social Security and DENIES
10  Plaintiff's Social Security complaint.

11       The Clerk of the Court IS DIRECTED to enter judgment for
12  Defendant Michael J. Astrue, Commissioner of Social Security,
13  and against Plaintiff Arturo Alvarez.

14  IT IS SO ORDERED.

15  **Dated:   August 14, 2009**              **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE